[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12576
Non-Argument Calendar

_____

D.C. Docket No. 0:16-cr-60152-WJZ-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN CARLOS YOANY ESPINAL,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 24, 2018)

Before TJOFLAT, WILLIAM PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

John Carlos Yonay Espinal appeals his conviction and sentence of 97

months of imprisonment following his plea of guilty to conspiring to possess with

intent to distribute 500 grams or more of a mixture containing cocaine. 21 U.S.C. §§ 841(a)(1), 846. Espinal argues, for the first time, that the government breached its plea agreement. Espinal also argues that the imposition of a sentence at the low end of his guideline range is unreasonable. We affirm in part and dismiss in part.

## I. BACKGROUND

Espinal signed a written agreement to plead guilty to a conspiracy offense involving a smaller amount of cocaine than was charged in his indictment. In exchange for Espinal's plea of guilty, the government agreed to dismiss a second drug charge against Espinal and to recommend that he receive a reduction for acceptance of responsibility, United States Sentencing Guidelines Manual § 3E1.1 (Nov. 2016), and a sentence "at the low end of the guideline range, as that range is determined by the Court." But the agreement relieved the government of its obligation to make the recommendations if Espinal "fail[ed] or refuse[d] to make a full, accurate and complete disclosure to the probation office"; "misrepresented facts to the government prior to entering this plea agreement"; or "commit[ted] any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official." The plea agreement also provided that Espinal "knowingly and voluntarily" "waive[d] all rights . . . to appeal any sentence imposed, . . . or to appeal the manner in which the

2

sentence was imposed," subject to three exceptions: his sentence "exceed[ed] the maximum permitted by statute"; the district court departed or varied upward "from the advisory guideline range that [it] establishe[d] at sentencing"; or "the United States appeal[ed] the sentence."

During the change of plea hearing, the district court discussed the plea agreement with Espinal. Espinal confirmed that he had discussed the agreement with his counsel before signing it, that he understood the terms of the agreement, and that he understood the district court was not bound by the sentencing recommendations in the agreement. Espinal acknowledged that his criminal history would be an "important factor" in calculating his sentencing range and that he could not withdraw his guilty plea as a result of the sentence he received. Espinal also confirmed that he had conferred with counsel about the appeal waiver, he had not been coerced to agree to the waiver, and he understood that he had waived the right to appeal his sentence, subject to the exceptions provided in the agreement. The district court accepted Espinal's plea of guilty and extended his release on bond while he attended a pretrial hearing on criminal charges pending against him in the Southern District of New York. The terms of Espinal's bond required that he refrain from using a narcotic drug or other controlled substance unless it was prescribed by a physician and that he submit to drug testing and to treatment.

Espinal's revised presentence investigation report stated that, after pleading guilty, he thrice tested positive for marijuana, he missed several sessions of drug counseling, he was arrested in New York for violating the terms of his pretrial release, and he was declared a fugitive by the district court and was arrested for failing to appear for a bond hearing. The report also recounted Espinal's statements to his probation officer in New York that he was not guilty of conspiracy and pleaded guilty because he feared conviction following a trial and that he thought he was "taking the fall for someone else." The presentence report did not recommend that Espinal receive a reduction for acceptance of responsibility because it was inconsistent with his misconduct while on bond, his continued criminal activities, and his failure to appear for his bond hearing. *See* U.S.S.G. § 3E1.1. With a base offense of 30 and criminal history of III, the report provided an advisory guidelines range of 121 to 151 months of imprisonment.

Espinal objected to the report and requested a reduction for acceptance of responsibility, but the district court overruled his objection. Espinal admitted that he had used illegal drugs and had failed to appear for his bond hearing, and he blamed his misconduct on his mother's illness, his drug addiction, and his girlfriend's pregnancy. The government argued that Espinal had "just fail[ed] to accept any responsibility" and that his misconduct evidenced a "blatant disregard" for authority. The district court remarked that Espinal's "misconduct while out on

4

bond was egregious," determined that Espinal's total offense level was 28, and calculated a sentencing range of 97 to 121 months of imprisonment.

Espinal requested a sentence of 70 months and opposed a sentence of 97 months even though the "plea agreement talk[ed] about the low end of the guidelines . . . ." The government responded that Espinal's conduct was "absolutely reprehensible" and that it was "not sure why [Espinal] reference[d] the plea agreement" because "[t]hat plea agreement is out the window" after "[h]e has violated every condition upon which we would be having to recommend the low end of the guidelines." The government argued that Espinal's conduct warranted a sentence of 121 months.

The district court sentenced Espinal to 97 months of imprisonment and five years of supervised release. The district court found that "Espinal . . . waived his right to appeal," but "just to cover everything," it informed Espinal that he had 14 days to appeal. At the conclusion of the hearing, the district court remarked that Espinal's "conduct releases the government from being bound to any recommendations that they might have made pursuant to the plea agreement, but I do not believe it releases [Espinal] from any agreement that he agreed to in the plea agreement."

## II. STANDARDS OF REVIEW

5

We apply two standards of review in this appeal. Because Espinal failed to object when given the opportunity during his sentencing hearing, we review his argument about the alleged breach of the plea agreement for plain error. *See Puckett v. United States*, 556 U.S. 129, 134–36 (2009); *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008). Under that standard, Espinal must prove that there is error that is plain and that violates his substantial rights. *Puckett*, 556 U.S. at 135; *De La Garza*, 516 F.3d at 1269. We review *de novo* the validity of Espinal's waiver of his right to appeal his sentence. *See United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).

### III. DISCUSSION

Espinal argues that the government breached the plea agreement by refusing to recommend that he receive a reduction for acceptance of responsibility and that his sentence is substantively unreasonable. The government responds that it did not violate the plea agreement and that Espinal's challenge to his sentence is barred by the appeal waiver in his plea agreement. We agree with the government.

No plain error occurred when the government refused to recommend that Espinal receive a reduction for acceptance of responsibility. "Whether the government violated the agreement is judged according to the defendant's reasonable understanding of the agreement when he entered the plea." *United States v. Thomas*, 487 F.3d 1358, 1360 (11th Cir. 2007). Under the agreement, the

6

government was "not . . . required to . . . recommend[]" that Espinal receive a reduction for acceptance of responsibility if, after pleading guilty, he "commit[ted] a state or federal offense, violat[ed] any term of release, or ma[de] false statements or misrepresentations to any government entity or official." Espinal engaged in every form of proscribed conduct: he used illegal drugs, skipped drug counseling, was arrested in New York and in Florida, and falsely denied guilt for conspiring to possess cocaine. The recommendation promised to Espinal was conditional, and his failure to comply with those conditions relieved the government of its obligation to support Espinal's request to reduce his sentence. *See United States v. Mahique*, 150 F.3d 1330, 1332 (11th Cir. 1998). The government did not breach the plea agreement.

The appeal waiver in Espinal's plea agreement bars his argument that his sentence is unreasonable. Although Espinal concedes that he knowingly and voluntarily waived his right to appeal his sentence, *see Johnson*, 541 F.3d at 1066, he argues that he was released from his waiver when the prosecutor stated at sentencing that the "plea agreement is out the window." But that observation that Espinal violated his obligations under the plea agreement did not affect the enforceability of the agreement. Nor did the district court release Espinal from his appeal waiver when it, as a purely precautionary measure, advised him of his right to appeal. When "an appeal waiver is voluntarily and knowingly entered into as

part of a valid plea agreement, and that agreement is accepted by the court," the appeal waiver "cannot be vitiated or altered by comments the court makes during sentencing." *United States v. Bascomb*, 451 F.3d 1292, 1297 (11th Cir. 2006); *see United States v. Howle*, 166 F.3d 1166, 1168–69 (11th Cir. 1999). We dismiss the appeal of Espinal's sentence.

## IV. CONCLUSION

We **AFFIRM** Espinal's conviction. We **DISMISS** Espinal's appeal of his sentence.

**AFFIRMED IN PART AND DISMISSED IN PART.**